IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JOHNNY LEE WALKER, #1215501 | § | |
| VS. | § | CIVIL ACTION NO. 6:17cv380 |
| DIRECTOR, TDCJ-CID, ET AL. | § | |

MEMORANDUM OPINION ADOPTING REPORT AND
RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Johnny Lee Walker, an inmate confined at the Coffield Unit within the Texas

Department of Justice, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit

pursuant to 42 U.S.C. § 2000cc Religious Land Use and Institutional Act (RLUIPA) and 42 U.S.C.

§ 1983 alleging purported violations of his statutory and constitutional rights. He names several

prison officials as Defendants.  The case was referred to the United States Magistrate Judge, the

Honorable Judge John D. Love.

**I. Background**

Walker filed this complaint on June 22, 2017, (Dkt. #1).  He asserted that he is a Muslim

prisoner and that prison officials have "forced" him to starve for twenty-five consecutive days

while he exercised his religious beliefs during Ramadan.  While Walker admitted that Muslims

prisoners are provided two meals before sunrise and after sunset during Ramadan, he maintained

that prison officials have failed to provide him with a sufficient amount of food to sustain good

health that satisfies the dietary laws of his religion.  (*See* Dkt. #1, generally.)  Walker insisted that,

as a Muslim exercising Ramadan wherein he must fast from sunrise to sundown, he is treated

differently than other prisoners—who are given a diet consisting of between 2,400 to 3,000

calories daily, while Muslim prisoners are only provided a diet of 1,000 to 1,5000 calories during

Ramadan. He argued that, during Ramadan, he and other devout Muslim prisoners "are shown [disparate] treatment because Muslims are provided a 1,000 - 1,500 calorie diet while other prisoners are provided [a] 2,400 - 3,000 calorie diet."

He further explained that "there is no forfeiture of calories by Muslims during the holy month of Ramadan" and that because of the lack of sufficient calories during Ramadan, he experienced hunger pains, muscle spasms, cramps, painful urination, irregular breathing, shortness of breath, migraines, blurred vision, and dizziness—all induced by hunger. Walker argued that he is "forced to choose whether he would eat to sustain his good health or endure great suffering to fulfill his obligatory duties in fast and worship." He also asserted that prison officials are acting with deliberate indifference. Walker seeks both compensatory and punitive damages, as well as a policy requiring that Muslim prisoners be fed the same number of calories as all other prisoners during Ramadan.

## II. Defendants' Motion to Dismiss

Defendants maintained that Walker failed to state a claim upon which relief can be granted. Specifically, they asserted that Walker failed to state a claim for a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA) because his claims do not implicate any denial of his ability to practice his religion. They also insisted that Walker cannot state a claim for deliberate indifference to his health and has not shown the Defendants' personal involvement in any constitutional violation. Finally, Defendants claimed that they are entitled to qualified immunity.

## III. Walker's Response

Walker filed a response to the motion to dismiss, (Dkt. #19). He stated that he has a First Amendment right to sufficient food to sustain good health that satisfies the dietary laws of his religion. Walker specifically articulated that he does "not contest that the defendants denied his

right to exercise [his right to] observe Ramadan fast"; however, "the exercise of that religious belief was substantially burdened by the defendants' actions and/or omission," particularly because of the lack of calories. (Dkt. #19, pg. 3). He insisted that "the lack of adequate food to sustain Walker as he exercise[s] his religious belief in observance of the Ramadan fast placed a substantial burden." *Id.* He asked that during the month of Ramadan, the lacking calories be added to the two meals served.

Walker also raises claims concerning heat at the Coffield Unit, claiming that the heat exacerbates his suffering from starving. He claimed that prison officials are aware that a Ramadan fast requires sustaining from water and that the unit is excessively hot. However, Walker complained that prison officials "made no effort to place Walker in a living area for the thirty days that constituted humane condition[s]," thereby demonstrating deliberate indifference. The Court noted that Walker is not raising an independent claim of a constitutional violation stemming from excessive heat; rather, he indicated that his hunger is exacerbated by the heat.

## IV. The Magistrate Judge's Report

On August 9, 2018, the Magistrate Judge issued Report, (Dkt. #20), recommending that Defendants' motion to dismiss be granted. Generally, the Magistrate Judge determined that Walker failed to state claims upon which relief can be granted because (1) his own words demonstrated that prison officials have not placed a substantial burden on his ability to practice his religion; (2) he failed to demonstrate a discriminatory purpose or intent; and (3) that he failed to state a claim of deliberate indifference with respect to meals. Walker has filed timely objections to the Report, (Dkt. #29).

**V. Legal Standards**

The Fifth Circuit has observed that motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and rarely granted." *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). Such motions are generally evaluated on the pleadings alone. *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986).

Nevertheless, rule 12(b)(6) allows a dismissal if a plaintiff "fails to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging System Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard is **not** akin to a probability standard; rather, the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Bell*, 550 U.S. at 556 (emphasis supplied).

Although all well-pleaded facts are taken as true, the district court need not accept true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 Fed.App'x 414, 2012 WL 5419531 (5th Cir. Nov. 7, 2012) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor

does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id*.

## VI. Discussion and Analysis

A review of Walker's complaint, Defendants' motion to dismiss, Walker's response to the motion, and his objections to the Report demonstrate that the Magistrate Judge properly recommended dismissal.

### A. RLUIPA and the First Amendment

RLUIPA provides, in relevant part, that:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). RLUIPA defines "religious exercise" broadly to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. §2000cc-5(7)(A). It is undisputed that Walker's decision to fast during Ramadan is an exercise of his religion.

Under RLUIPA, the plaintiff carries an initial burden to show that the challenged law, regulation, or practice substantially burdens the exercise of his religion. *See Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004) ("Initially, if falls to the plaintiff to demonstrate that the government practice complained of imposes a substantial burden on his religious exercise."). If the plaintiff carries his burden, then the government bears the burden of persuasion that application of its substantially burdensome practice is in furtherance of a compelling governmental interest

and is the least restrictive means of furthering that interest. *Id*. at n. 32. While the statute does not define "substantial burden," the Fifth Circuit defined the term as follows:

> [A] government action or regulation creates a "substantial burden" on religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs …. [T]he effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following is religious beliefs.

*Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 613 (5th Cir. 2008) (citing *Adkins*, 393 F.3d at 570).

As a matter of law, RLUIPA does not create a cause of action against defendants in their individual capacities. *See Sossaman v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009); *Copeland v. Livingston*, 464 F. App'x 326, 330 (5th Cir. 2012) (unpublished) (explaining that "RLUIPA does not create a provide right of action against individuals for damages."). Damages are also not available under RLUIPA against any defendants—as state actors—in their official capacities. *See Sossaman v. Texas*, 563 U.S. 277, 280 (2011).

Furthermore, First Amendment protections of free exercise require the government to refrain from interfering with the religious beliefs and practices of individuals. *See Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005) ("The second, the Free Exercise Clause, requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people."). However, while prisoners retain their First Amendment right to exercise religion, "this right is subject to reasonable restrictions and limitations necessitated by penological goals." *See Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1999).

In order to balance federal constitutional guarantees with the legitimate concerns of prison officials, a court must determine (1) whether a rational connection exists between the prison policy

regulation and a legitimate governmental interest; (2) whether alternative means of exercising the constitutional right are available; (3) what effect accommodating the exercise of the right would have on the prison system and resources; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

In his complaint, as mentioned, Walker insists that prison officials have placed a substantial burden on his religious exercise by providing two meals—before sunrise and after sunset during Ramadan—that do not have enough calories to sustain good health. Walker states that prison officials provided Muslim prisoners who are fasting 1,000 to 1,500 calories. He states that as he fasts during Ramadan—because of lack of calories—he experiences hunger pains, muscle spasms, cramps, painful urination, irregular breathing, shortness of breath, migraines, blurred vision, and dizziness—all induced by hunger.

Furthermore, in his response to Defendants' motion to dismiss, Walker admitted that that he does "not contest that the defendants denied his right to exercise [his right to] observe Ramadan fast, the exercise of that religious belief was substantially burden[ed] by the defendants' actions and/or omission." (Dkt. #19, pg. 3). In other words, Walker claims that prison officials are not denying his ability to fast, but, rather, the exercise of his Ramadan fast has been substantially burdened by the lack of calories. (Dkt. #1, generally).

The Magistrate Judge determined that, under a RLUIPA analysis, his own words demonstrate that prison officials have not placed a substantial burden on his religious exercise. Specifically, the Magistrate Judge highlighted how Walker explained that the defendants have not "denied his right to exercise [or] observe Ramadan fast." He also reasoned that Walker's dissatisfaction with the amount of food he receives did not state a claim that prison officials placed a substantial burden on his religious exercise because he failed to articulated specific facts

suggesting that the lack of calories has prevented him from fasting or otherwise exercising his Muslim faith.

On objection, Walker states that his "RLUIPA claim" is that "he was substantially burdened because he chose to exercise his religion." (Dkt. #29, pg. 2). Moreover, he claims that because of his "suffering" and "discomfort," he could not fulfill his obligatory duties under the Muslim faith—such as reading, praying, charity work, sacrifice, and teaching, which has caused him to "alter his religious practice." *Id.* He states that the lack of calories "distract" him from his religious tenets. Walker also notes that "because of the inadequate amount of food he suffered great bodily discomfort to the point that his celebration of fast was divided between his observance of Ramadan and his good health." He explains that he is poor, so he could not purchase food from the prison commissary.

Furthermore, Walker alleges that prison security "purposely" sat on the bell to indicate that count was clear to "intentionally delay the morning meal," which forced him to "break his fast to save his good health or forsake his good health and not eat and hydrate his body during the excessive heat days." (Dkt. #29, pg. 6).

As an initial matter, generally, an issue raised for the first time in an objection to a Magistrate Judge's Report is not properly before the District Court. *See United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992). Here, Walker's claims concerning his alleged inability to fulfill his obligatory religious duties and how prison officials purportedly "sat on the bell" were not raised in either his complaint, (Dkt. #1), or in his response to the Defendants' motion to dismiss. He raises this claim only after the Magistrate Judge properly outlined the law concerning "substantial burden" under RLUIPA. Accordingly, these claims are not properly before the District Court; however, in the interests of justice, the Court will address them.

Walker's objections are meritless and the Magistrate Judge properly recommended that he failed to state a claim upon which relief can be granted under either RLUIPA and the First Amendment. As a reminder, to show a RLUIPA violation, the Plaintiff must show that a challenged law, regulation, or practice substantially burdens the exercise of his religion. *Adkins*, 393 F.3d at 567. The Fifth Circuit has explained that a practice or regulation places a "substantial burden" on religious exercise if it "truly pressures the adherent to significantly modify his religious behavior" or forces the adherent to choose between a generally available benefit or following is religious beliefs. *See Mayfield*, 529 F.3d at 613.

Here, as mentioned above and throughout the Magistrate Judge's Report, Walker admitted that he does "not contest that the defendants denied is right to exercise[/]observe the Ramadan fast." (Dkt. #19, pg. 3). His entire complaint indicates that prison officials provide him and other Muslim prisoners meals before sunrise and after sunset—in accordance with their religious exercise. His complaint is merely that his meals served during Ramadan do not contain enough calories. Walker's statements that prison officials do not deny him his right to fast during Ramadan indicates that prison officials have not placed a substantial burden on the exercise of his religion— as his own words illustrates that prison officials are not invoking any policy, regulation, or practice substantially burdening his right to fast during Ramadan.

Turning to his claims regarding his "suffering and "discomfort" stemming from the lack of calories, the Court notes that Walker provides no substantiation that prison officials are only providing fasting Muslims with 1,000 to 1,500 calories per day. His claim is purely conclusory, with absolutely no factual enhancement other than his own belief that it is so. The Court is not required to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley*, 496 F. App'x 414, 2012 WL 5419531. Additionally, because Walker

provides no substantiation that Muslim inmates are only fed a certain number of calories during Ramadan, his claim is nothing more than the "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

Furthermore, with respect to his claim that his hunger "suffering" resulted in "distraction" and his inability to fulfill his obligatory duties under the Muslim faith—such as reading, praying, charity work, sacrifice, and teaching, which has caused him to "alter his religious practice"—the Court notes that Walker's contentions are inherently illogical. While he concedes that he receives two meals per day during the Ramadan fast, he claims that his "starvation" precludes his ability to read or pray. The Court finds his claim dubious. Walker's assertions that his "discomfort" has forced him to "alter his religious practices" is conclusory—as he does not state how he has had to alter his religious practices.

Similarly, Walker asserts that he is unable to perform "charity work" because of his hunger; however, Walker's inability to perform charity work in prison is not reliant on his caloric intake or his feelings of hunger pangs. Prisoners are not allowed to possess money while in prison; therefore, he cannot donate money to charity and it must then be presumed that charity work would take the form of kindness and friendship to his fellow inmates—which is not dependent on hunger.

Likewise, his complaint that he is poor and has no money to purchase food from the commissary is meritless. If Walker is poor, then is stands to reason that he would be unable to purchase commissary regardless of his participation in a Ramadan fast. Consequently, Walker's assertions that prison officials are "substantially burdening" his religious exercise during Ramadan are meritless. Moreover, Walker's statement concerning prison officials purposely delay a morning meal is, once again, purely conclusory. Delaying a meal because of count is not a policy or regulation; rather, it is an unfortunate happenstance occurring throughout prison life. The fact

that he may have had to break his fast on a single occasion is unfortunate but does not amount to a substantial burden or a constitutional violation. *See, e.g.*, *Jones v. Shabazz*, 2007 WL 2873042 *14 (S.D. Tex.—Houston, Sept. 28, 2007) ("In any event, Plaintiff has not shown a substantial burden on the free exercise of his religion, or a violation of the First and Fourteenth Amendment by his assertion of one minor, isolated incident in the kitchen and a theoretical condition of possible contamination in the chow hall."). Finally, Walker's comment that his hunger while fasting merely "distracts" him from his religion is not tantamount to a substantial burden under RLUIPA.

The Magistrate Judge correctly reasoned that Walker failed to state a claim upon which relief can be granted under RLUIPA. His own words demonstrate that he is able to fast during Ramadan and that prison officials have not placed a substantial burden. Walker's claims of being unable to read or pray because of hunger (after receiving two meals) are dubious and, similarly, he has not explained how he has had to "alter" his religious practices as a result of calories.

Turning to Walker's First Amendment free exercise claims, the Magistrate Judge found that, again, Walker's own words demonstrate that prison officials have not interfered with his right to participate in a Ramadan fast. As mentioned, Walker admits that he is able to fast during Ramadan. A review of his objections show that he does not contest the Magistrate's reasoning under a First Amendment analysis.

*B. Fourteenth Amendment and Disparate Treatment*

In his complaint, Walker argued that he and "devout Muslims, during the holy month of Ramadan, are shown [disparate] treatment because Muslims are provided a 1000 - 1500 calorie diet while other prisoners are provided [a] 2400 - 3000 calorie diet." (Dkt. #1, pg. 4). He maintained that this is unequal and disparate treatment.

The Equal Protection clause of the Fourteenth Amendment provides that "[n]o State shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. 14 § 1. To establish a violation of the Equal Protection Clause, the plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from discriminatory intent." *See Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001); *see also Gallegos-Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012) ("To establish an equal protection claim, Gallegos must show that two or more classifications of similarly situated persons were treated differently.").

A plaintiff alleging disparate treatment must identify a discriminatory purpose, as that "implies that the decision-maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *See Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). Crucially, a plaintiff must allege specific facts supporting a claim of discrimination—as opposed to his or her personal belief that discrimination occurred. *Id.*

In his Report, the Magistrate Judge determined that Walker had wholly failed to articulate or identify any discriminatory purpose—even if he identified similarly situated individuals. On objection, Walker maintains that "because of pro-Trump followers on the Coffield Unit," prison officials show "no conscious" in demonstrating their hatred toward Muslims and their religious practices. (Dkt. #29, pg. 6).

As mentioned, an issue raised for the first time in an objection to a Magistrate Judge's Report is not properly before the District Court. *See Armstrong*, 951 F.2d at 630. Walker never articulated anything about prison officials hating Muslims in his complaint or in his response to Defendants' motion to dismiss. Accordingly, this objection is not properly before the District

Court. Nonetheless, his claim that "pro-Trump" followers at the Coffield Unit hate Muslims is purely conclusory with no factual enhancement whatsoever. He has failed to articulate how this alleged "hatred" of Muslims resulted in Muslims receiving a certain number of calories in their meals. The Magistrate Judge correctly recommended that Walker's claim of disparate treatment should be dismissed and his objections on this point are meritless.

### C. Deliberate Indifference and Food

In his complaint, Walker contended that prison officials were acting with deliberate indifference to his medical needs by failing to provide enough calories. He also noted that federal courts have "consistently held that long periods of insufficient food to sustain one's food health is unconstitutional and it constitutes starvation."

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under section 1983. *See Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id*. at 837.

Furthermore, it is well-settled that the Constitution requires inmates be provided with well-balanced meals, consisting of sufficient nutritional value to preserve life. *See Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir. 1981). However, "[t]he deprivation of food constitutes cruel and unusual punishment only if it denies the prisoner the minimal civilized measure of life's necessities." *See Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (internal citation and quotation

omitted).  The prison system is not required to provide inmates with three meals per day.  *See Green*, 801 F.2d at 770.

The Magistrate Judge found that Walker failed to demonstrate that any prison officials purposely disregarded his need to eat, that his own words concerning his meals during his Ramadan fast showed that he was not deprived of the "minimalized civilized measure of life's necessities," and failed to state a claim of harm—as he failed to connect any of his medical problems to the purported lack of calories.

On objection, Walker basically reiterates his arguments.  He also opines that the Magistrate Judge suggests that feeding an individual 1500 calories per day is humane.  Walker argues that providing such calories "for thirty (30) consecutive days caus[es] his body to feed upon itself to prevent system failure and shutdowns or organ damage."  (Dkt. #29, pg. 8).

Moreover, Walker insists that that *Heard v. Finco*, 2015 U.S. App. LEXIS 23152 (6th Cir. 2015) (unpublished) is persuasive authority.  In *Heard*, where the Plaintiff raised solely a First and Eighth Amendments claim, the Sixth Circuit Court of Appeals—in ruling on an interlocutory appeal on a qualified immunity inquiry—ruled that a prisoner has a clearly established right to a nutritionally adequate diet and that it was "clear that a diet consisting of 1,000 to 1,500 calories per day can violate that right."  *Heard*, 2015 U.S. App. LEXIS 23152 *6.  The *Heard* court explained that the Defendants "accepted" that prisoners were giving 1,000 to 1,500 calories per day during Ramadan fasts. *Id.*  The court explained that—given the Plaintiff's complaints of hunger pains, dizziness, and loss of weight—established a genuine issue of material fact concerning qualified immunity.  Importantly, however, the court explained that "it is not clear to us whether the plaintiffs can receive relief on both their First and Eighth Amendment claims."  *Id.*

Here, the Magistrate Judge properly recommended dismissal of Walker's Eighth Amendment claims. First, Walker's statement that the calories provided causes his body to feed upon itself to prevent system and organ failures is both speculative and conclusory: As mentioned, Walker provides no substantiation that prison officials are only providing Muslims 1000 - 1500 calories during Ramadan and, more importantly, he merely speculates that such lack of calories will result in organ failure. These objections are therefore meritless.

Second, with respect to two meals per day during Ramadan, the Magistrate Judge correctly determined that Walker failed to state a claim. As highlighted above and in the Report, "[t]he deprivation of food constitutes cruel and unusual punishment **only** if it denies the prisoner the minimal civilized measure of life's necessities." *See Berry*, 192 F.3d at 507 (emphasis supplied). The Fifth Circuit even expressed doubt that a prisoner who "missed about fifty meals in five months and lost about fifteen pounds" met the threshold for a cognizable Eighth Amendment claim. *Id*. at 508 (citing *Talib v. Gilley*, 138 F.3d 211, 214 n .3 (5th Cir. 1998) ("Missing a mere one out of every nine meals is hardly more than that missed by many working citizens over the same period. We are therefore doubtful that Talib was denied anything close to a minimal measure of life's necessities.")). Similarly, here, the Court doubts that Walker was denied the minimal measure of life's necessities when he was—as he admits—provided two meals for thirty days during his Ramadan fast. *See Green*, 801 F.2d at 770-71 (even on a regular, permanent basis, two meals per day may be adequate).

Importantly, the Supreme Court has observed that serving a food concoction to prisoners, called "grue," which provided only 1000 calories per day "might be unconstitutional if served for long periods" of time. *See LeMarie v. Maass*, 12 F.3d 1444, 1456 (1993) (citing *Hutto v. Finney*, 437 U.S. 678-686-87 (1978)). Here, Walker complains of receiving two meals a day—which he

merely speculates contains 1000 - 1500 calories per day—for thirty days. Compared to the prisoner in *Berry* who missed fifty meals over five months, this is neither permanent nor a "long period" of time. Consequently, the Court finds that prison officials providing Walker two meals per day does not deprive him of the minimal measure of life's necessities. *See, e.g.*, *Ybarra v. Meador*, 427 F. App'x 325, 326 (5th Cir. 2011) (recognizing that isolated incidents of meal deprivation are not constitutionally cognizable."). The Magistrate Judge properly recommended dismissal.

On objection, Walker repeats his claims of hunger pangs, painful urination, headaches, dizziness, and other symptoms stemming from his "starvation." However, as the Magistrate Judge reasoned, Walker does not connect these symptoms to the alleged lack of calories. While he believes that the Ramadan meals do not contain enough calories—and thus cause a myriad of medical problems—the Court notes that a prisoner's mere self-diagnosis of a serious medical condition is insufficient without medical evidence verifying that the condition exists. *See Aswegan v. Henry*, 49 F.3d 461, 465 (8th Cir. 1995); *accord*, *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (prisoner's self-diagnosis alone will not support a medical conclusion); *McClure v. Foster*, civil action no. 5:10cv78, 2011 WL 665819 (E.D. Tex., January 7, 2011, *Report adopted at* 2011 WL 941442 (E.D. Tex., February 16, 2011, *aff'd* 465 F. App'x 373, 2012 WL 1059408 (5th Cir., March 29, 2012) (citing *Aswegan* and *Kayser*). As the Magistrate Judge highlighted in his Report, Walker never articulated that he sought medical attention for his symptoms; on objection, he still does not. In other words, Walker's bare self-diagnoses do not demonstrate deliberate indifference.

Turning to Walker's presentation of *Heard v. Finco*, the Court does not find *Heard* persuasive. First, *Heard* is Sixth Circuit Court of Appeals opinion, which is not binding on this Court. Additionally, as mentioned above, the *Heard* court explained that the Defendants

"accepted" that prisoners were given 1,000 to 1,500 calories per day during Ramadan fasts. *See Heard*, 2015 U.S. App. LEXIS 23152 *6.

However, here, the Defendants have not admitted that Muslim inmates are served 1,000 to 1,500 calories per day during Ramadan. More importantly, Walker simply assumes that the Ramadan meals contain only 1,000 to 1,500 calories—as he provides not substantiation for his claim concerning the number of calories. Therefore, unlike *Heard*, here, there is no indication that Muslim prisoners are served only a set number of calories during Ramadan. *See, e.g.*, *Hall v. Sutton*, 2013 WL 6631532 *3 (S.D. Ill. Dec. 16, 2013) ("While he has pointed to another district court case involving the question of whether providing two meals instead of three during Ramadan violated the First Amendment, *Couch v. Jabe*, 479 F.Supp.2d 569, 589 (W.D. Va. 2006), that case assumed without any evidence that the plaintiff's estimate of only receiving 1,000 calories per day was correct. This Court declines to make such an assumption, so [it] is not persuaded by *Couch*.").

Likewise, Walker's words demonstrate that he is assuming that prison officials are only providing 1000 - 1500 calories per day to Muslims during Ramadan. Walker does not articulate what, exactly, he is fed during Ramadan or how it is inadequate. As in *Hall*, the Court here declines to make an assumption concerning inadequate calories or nutrition without any evidence whatsoever. *See, e.g.*, *Skinner v. Quarterman*, 2011 WL 13131162 *9 (E.D. Tex.—Lufkin, Aug. 9, 2011) ("Plaintiff only alleges that he, and other prisoners, are not provided "a balanced nutritional level of 2400 to 2700 calories. He does not allege what he and others are typically fed, nor when, nor how it fails to meet a nutritional balance, nor even cite any standard that '2400 to 2700 calories' is appropriate. His allegation is merely conclusory and thus inadequate.").

Further, contrary to Walker's contention, the *Heard* court expressly explained that "it is not clear to us whether the plaintiffs can receive relief on both their First and Eighth Amendment

claims." *Id*. Accordingly, the *Heard* court did not find an Eighth Amendment violation with respect to the number of calories served to Muslim prisoners during Ramadan. The Court does not find *Heard* persuasive or analogous to this case. Once again, the Court need not accept true Walker's conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley*, 496 F. App'x 414, 2012 WL 5419531.

### D. Personal Involvement and Qualified Immunity

The Magistrate Judge found that Walker wholly failed to demonstrate the Defendants personal involvement in any constitutional violation. On objection, Walker outline the three Defendants' personal involvement:

> Defendant Bryan Collier: He is aware that the policy in place that governs the meals served [to] Muslims during Ramadan fast fail to satisfy the dietary laws of their Islamic belief.

> Defendant Jeffrey Catoe, Sen. Warden: He is liable for the health and safety of all inmates in his care. Underfeeding Muslims for thirty (30) consecutive days [does] not protect this liability.

> Defendant Felicia Tuner, Kitchen Captain: She fail[s] to supplement adequate calories of the two meals provided to equate sufficient nutritionally adequate food to sustain Muslims good health during the thirty day Ramadan fast.

(Dkt. #29, pg. 9).

It is well-settled that a plaintiff in a civil rights case must demonstrate not only a constitutional violation, but also personal involvement on behalf of those alleged to have violated the plaintiff's constitutional rights. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."); *Thompson v. Crnkovich*, 2017 WL 5514519 *2 (N.D. Tex.—Albilene, Nov. 16, 2017) ("Without personal involvement or participation in an alleged constitutional violation, or implementation of a deficient policy, the individual should be dismissed as a defendant.").

Here, because Walker has failed to demonstrate a constitutional violation, it necessarily follows that the Defendants have had no personal involvement. While Walker insists that Defendants are responsible for providing nutritionally adequate meals to Muslims during Ramadan, the fact remains that (1) Walker failed to articulate how the meals were not nutritionally inadequate other than his mere speculation regarding the number of calories; and (2) his own words demonstrate that Defendants have not prevented him from fasting or interfered with his First Amendment right to exercise his religion. Additionally, as mentioned, because Walker conceded that prison officials allow Muslims prisoners to participate in the Ramadan fast, he has not identified a deficient policy or regulation indicating otherwise. The Magistrate Judge correctly determined that Walker failed to show the Defendants' personal involvement in any constitutional violation, and his objections on these points are meritless.

Turning to qualified immunity, the Magistrate Judge determined that because Walker failed to state claims upon which relief can be granted, an analysis on qualified immunity was irrelevant. On objection, Walker highlights the *Heard* decision, which has been discussed in detail above.

The doctrine of qualified immunity protects government officials from liability for monetary damages in their individual capacities insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Thompson v. Mercer*, 762 F.3d 433, 436-37 (5th Cir. 2014). Claims of qualified immunity require a two-step analysis: First, the court determines whether a constitutional right would have been violated on the facts alleged and, second, whether the constitutional right was clearly established at the time of the alleged violated. *Kitchen v. Dallas County*, 759 F.3d 468, 476 (5th Cir. 2014). Importantly, even if the official's conduct violated a clearly established constitutional right, the

official is nonetheless entitled to qualified immunity if his or her conduct was objectively reasonable. *See Jones v. Collins*, 132 F.3d 1048, 1052 (5th Cir. 1998).

The *Heard* court found that there was a clearly established right to a nutritionally adequate diet. As a result, the defendants in that case were not entitled to qualified immunity because, the court reasoned, "a diet consisting of 1,000 to 1,500 calories per day **can** violate that right." *Heard*, 2015 U.S. App. LEXIS 23152 *6 (emphasis supplied).

However, here, the Sixth Circuit's opinion is not binding on this Court. Moreover, the *Heard* court did not expressly find that a diet consisting of 1,000 to 1,500 calories per day violates any right. Perhaps more importantly, in *Heard*, the court accepted the notion that prisoners were fed only 1,000 to 1,500 calories per day. Here, however, Walker's entire complaint rests upon the assumption that his meals contain only 1,000 to 1,500 calories—as mentioned, Walker failed to explain what he is fed or how his meals are nutritionally inadequate, other than his own assertions that they are so. For these reasons, the Court is not persuaded by the holding or reasoning in *Heard*. The Magistrate Judge correctly declined to perform a qualified immunity analysis, and Walker's objections on this point are meritless.

## VII. Conclusion

The Magistrate Judge correctly determined that Walker failed to state claims upon which relief can be granted on his RLUIPA, First Amendment, and Eighth Amendment claims. His own words demonstrate that prison officials are not substantially burdening his right to participate in a Ramadan fast. Moreover, prison officials are not interfering with that right, as he concedes that he is provided meals before sunrise and after sunset in accordance with his religious beliefs. Walker's dissatisfaction with the number of calories in both meals does not state an Eighth Amendment claim because he does not highlight or explain what he is fed, how his food is

nutritionally inadequate, or even connect his "starvation" to any medical conditions. Instead, his complaint is conclusory, speculative, and the "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Accordingly, it is

ORDERED that the Report of the Magistrate Judge, (Dkt. #20), is **ADOPTED** as the opinion of the Court. Walker's objections, (Dkt. #29), are overruled. Further, it is

ORDERED that Defendants' motion to dismiss, (Dkt. #15), is **GRANTED**. Plaintiff's civil rights lawsuit is hereby dismissed. Finally, it is

ORDERED that any and all motions which may be pending in this action are hereby **DENIED**.

So **ORDERED** and **SIGNED** September 24, 2018.

_____
Ron Clark, Senior District Judge